FILED
2021 Mar-31  AM 09:31
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

| | | |
|---|---|---|
| KATHRYN FAUGHN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:19-cv-02025-SGC |
| | ) | |
| SOCIAL SECURITY | ) | |
| ADMINISTRATION, Commissioner, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION[1]

The plaintiff, Kathryn Faughn, appeals from the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for Disability Insurance Benefits ("DIB").  Faughn timely pursued and exhausted her administrative remedies, and the Commissioner's decision is ripe for review pursuant to 42 U.S.C §§ 405(g) and 1383(c)(3).  For the reasons discussed below, the Commissioner's decision is due to be affirmed.

### I. Procedural History

Faughn has a master's degree in psychology and previously has been employed as a therapist.  (Tr. at 24, 35).  In her application for DIB, Faughn alleged she became disabled on September 9, 2016, due to a variety of physical and mental

---

[1] The parties have consented to the exercise of full dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c).  (Doc. 12).

impairments.  (*Id.* at 15, 17-19).  After her claim was denied, Faughn requested a hearing before an administrative law judge ("ALJ").  (*Id.* at 15).  Following a hearing, the ALJ denied Faughn's claim.  (*Id.* at 12-28).  Faughn was 47 years old when the ALJ issued her decision.  (*Id.* at 24-25).  After the Appeals Council denied review of the ALJ's decision (*id.* at 1-6), that decision became the final decision of the Commissioner, *see Frye v. Massanari*, 209 F. Supp. 2d 1246, 1251 (N.D. Ala. 2001) (citing *Falge v. Apfel*, 150 F.3d 1320, 1322 (11th Cir. 1998)).  Thereafter, Faughn commenced this action.  (Doc. 1).

## II. Statutory and Regulatory Framework

To establish eligibility for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 416(i)(1)(A), 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a).  Furthermore, a claimant must show she was disabled between her alleged initial onset date and her date last insured.  *Mason v. Comm'r of Soc. Sec.*, 430 F. App'x 830, 831 (11th Cir. 2011) (citing *Moore v. Barnhart*, 405 F.3d 1209, 1211 (11th Cir. 2005); *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979)).  The Social Security Administration ("SSA") employs a five-step sequential analysis to determine an individual's eligibility for disability benefits.  20 C.F.R. §

2

404.1520(a)(4).

First, the Commissioner must determine whether the claimant is engaged in "substantial gainful activity." *Id.* at § 404.1520(a)(4)(i). If the claimant is engaged in substantial gainful activity, the Commissioner will find the claimant is not disabled. *Id.* at § 404.1520(a)(4)(i) and (b). At the first step, the ALJ determined Faughn meets the SSA's insured status requirements through December 31, 2021, and had not engaged in substantial gainful activity since September 9, 2016, the alleged onset date of her disability. (Tr. at 17).

If the claimant is not engaged in substantial gainful activity, the Commissioner must next determine whether the claimant suffers from a severe physical or mental impairment or combination of impairments that has lasted or is expected to last for a continuous period of at least twelve months. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the Commissioner will find the claimant is not disabled. *Id.* at § 404.1520(a)(4)(ii) and (c). At the second step, the ALJ determined Faughn has the following severe impairments: migraines, fibromyalgia, Sjögren's syndrome, and/or some other connective tissue disease. (Tr. at 17).

If the claimant has a severe impairment or combination of impairments, the Commissioner must then determine whether the impairment or combination of impairments meets or equals one of the "Listings" found in 20 C.F.R. Part 404,

Subpart P, Appendix 1.   20 C.F.R.   §   404.1520(a)(4)(iii).   If the claimant's impairment or combination of impairments meets or equals one of the Listings, the Commissioner will find the claimant is disabled.  *Id.* at § 404.1520(a)(4)(iii) and (d). At the third step, the ALJ determined Faughn does not have an impairment or combination of impairments that meets or medically equals the severity of one of the Listings.  (Tr. at 20).

If the claimant's impairment or combination of impairments does not meet or equal one of the Listings, the Commissioner must determine the claimant's residual functional capacity ("RFC") before proceeding to the fourth step.  20 C.F.R. § 404.1520(e).  At the fourth step, the Commissioner will compare an assessment of the claimant's RFC with the physical and mental demands of the claimant's past relevant work.  *Id.* at § 404.1520(a)(4)(iv) and (e).  If the claimant can perform her past relevant work, the Commissioner will find the claimant is not disabled.  *Id.* at § 404.1520(a)(4)(iv).  If the claimant cannot perform her past relevant work, the Commissioner must finally determine whether the claimant is able to perform other work that exists in substantial numbers in the national economy in light of her RFC, age, education, and work experience.  20 C.F.R. § 404.1520(a)(4)(v) and (g)(1).  If the claimant can perform other work, the Commissioner will find the claimant is not disabled.  *Id.*  at § 404.1520(a)(4)(v) and (g)(1).  If the claimant cannot perform other work, the Commissioner will find the claimant is disabled.  *Id.* at § 404.1520(a)(4)(v)

4

and (g)(1).

Before proceeding to the fourth step, the ALJ determined Faughn has the RFC to perform a limited range of light work.  (Tr. at 20).[2]  At the fourth step, the ALJ determined Faughn can perform her past relevant work as a therapist.  (*Id.* at 24). Notwithstanding her determination at the fourth step of the sequential analysis, the ALJ proceeded to the fifth step and determined in the alternative that considering Faughn's age, education, work experience, and RFC there are jobs existing in significant numbers in the national economy, such as those of assembler, office helper, and inspection checker, that Faughn can perform.  (Tr. at 24-25).  Therefore, the ALJ concluded Faughn is not disabled.  (*Id.* at 25).

## III. Standard of Review

Review of the Commissioner's decision is limited to a determination of whether that decision is supported by substantial evidence and whether the Commissioner applied correct legal standards.  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004).  A district court must review the Commissioner's findings of fact with deference and may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner.

---

[2] Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and may require "a good deal of walking or standing . . . or . . . involve[] sitting most of the time with some pushing and pulling of arm or leg controls."  20 C.F.R. § 404.1567(b).

*Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007); *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).  Rather, a district court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (internal citations omitted).   Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.*  It is "more than a scintilla, but less than a preponderance." *Id.*  A district court must uphold factual findings supported by substantial evidence, even if the preponderance of the evidence is against those findings. *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

A district court reviews the Commissioner's legal conclusions *de novo*.  *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993).  "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## IV. Discussion

On appeal, Faughn argues (1) the ALJ was not properly appointed and, therefore, lacked legal authority to hear her case and (2) the ALJ erred in assigning no more than partial weight to the opinions of Dr. David A. McLain.  (Doc. 9).

A.     **Appointments Clause Challenge**

The Supreme Court held in *Lucia v. S.E.C.* that ALJs for the Securities and Exchange Commission ("SEC") are "Officers of the United States" and, therefore, required under the Appointments Clause, U.S. CONST. art. II, § 2, cl. 2, to be appointed by the President, a court of law, or a head of department.  138 S. Ct. 2044, 2051-55 (2018).  It further held that because SEC ALJs were not so appointed, the petitioner was entitled to a new hearing before a constitutionally appointed ALJ.  *Id.* at 2055.

Following *Lucia* and an executive order concluding "at least some – and perhaps all – ALJs are 'Officers of the United States' and thus subject to the Appointments Clause," *see* EXEC. ORDER NO. 13,843, 83 FED. REG. 32,755 (July 10, 2018), the Acting Commissioner of Social Security ratified the appointments of SSA ALJs and approved those appointments as her own on July 16, 2018, *see* SSR 19-1p.

In the wake of the foregoing, Social Security claimants have presented federal courts with Appointments Clause challenges arguing they are entitled to new hearings because the ALJs who presided over their cases had no legal authority to do so.  The Commissioner has defended against these challenges on the ground that a claimant who did not raise the challenge before the ALJ or the Appeals Council has failed to exhaust her administrative remedies and, therefore, forfeited the

7

challenge.  In reply, claimants have argued there is no exhaustion requirement for Appointments Clause challenges related to SSA proceedings.  Faughn impliedly concedes she did not present her Appointments Clause challenge to the ALJ or the Appeals Council.  (Doc. 9 at 5).  Consequently, the question before the undersigned is whether, as the Commissioner argues, that failure has resulted in a forfeiture of the challenge.

Faughn relies heavily on the Third Circuit's decision in *Cirko on behalf of Cirko v. Comm'r of Soc. Sec.*, 948 F.3d 148 (3d Cir. 2020), to support her position she was not required to have presented her Appointments Clause challenge to the ALJ or the Appeals Council.  In *Cirko*, the Third Circuit held a Social Security claimant could raise an Appointments Clause challenge for the first time before a district court.  948 F.3d at 152-59.

However, both pre- and post-*Cirko*, a majority of district courts have held a Social Security claimant who fails to raise an Appointments Clause challenge in the administrative proceedings has forfeited the issue.  *See, e.g.*, *Griffin v. Comm'r of Soc. Sec.*, 2020 WL 733886, at *10 (N.D. Iowa Feb. 13, 2020) (collecting cases), *appeal filed sub. nom. Griffin v. Saul*, No. 20-1784 (Apr. 15, 2020).  This includes district courts within the bounds of the Eleventh Circuit.  *See, e.g., Gagliardi v. Soc. Sec. Admin.*, 441 F. Supp. 3d 1284, 1288-90 (S.D. Fla. Feb. 28, 2020) (noting Florida district courts "routinely" have so held) (rejecting *Cirko*), *appeal filed*, No. 10-10858

8

(Mar. 2, 2020); *Alfarano v. Saul*, 2020 WL 4808746, at \*12-13 (M.D. Fla. Aug. 1, 2020) (noting majority of courts within and outside bounds of Eleventh Circuit have so held) (rejecting *Cirko*), *report and recommendation adopted*, 2020 WL 4785455 (M.D. Fla. Aug. 18, 2020); *Bryant v. Comm'r, Soc. Sec. Admin.*, 2020 WL 4691363, at \*8 (N.D. Ala. May 20, 2020) (noting courts within bounds of Eleventh Circuit unanimously have so held), *report and recommendation adopted*, 2020 WL 4437479 (N.D. Ala. June 19, 2020); *VanHorn v. Saul*, 2020 WL 6562363, at \*3-4 (N.D. Ala. Nov. 9, 2020) (holding claimant waived Appointments Clause challenge by not raising challenge before SSA), *appeal filed sub. nom. VanHorn v. Soc. Sec. Admin.*, No. 21-10046 (Jan. 5, 2021).[3]

The undersigned adopts the reasoning and position of the majority of district courts to have addressed the issue, including those within this federal judicial circuit, and holds Faughn's failure to present her Appointments Clause challenge to the ALJ or the Appeals Council results in forfeiture of the challenge at this stage of the proceedings.

To the extent Faughn argues her failure to exhaust her administrative remedies with respect to her Appointments Clause challenge should be excused under *Freytag v. C.I.R..*, 501 U.S. 868 (1991), she has not shown this is one of the "rare" cases to

---

[3] The Eleventh Circuit has not yet addressed the issue, although as indicated in the citations above, several appeals raising the issue are pending before the circuit court.

which *Fretyag* applies.  *See, e.g., VanHorn*, 2020 WL 6562363, at *3 (declining to apply *Freytag* to excuse claimant's failure to raise Appointments Clause challenge before SSA); *Bryant*, 2020 WL 4691363, at *11 (same).  To the extent Faughn cites *Mathews v. Eldridge*, 424 U.S. 319 (1976), for the proposition the SSA "has no power to adjudicate [an Appointments Clause] challenge and the topic is inherently beyond the scope of the administrative proceeding" (Doc. 9 at 8), the undersigned rejects Faughn's reading of *Mathews* for the same reasons such reading was rejected in *Bryant*.  *See Bryant*, 2020 WL 4691363, at *11.

### B.     Treating Physician's Opinions

" 'Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions.'"  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178-79 (11th Cir. 2011) (quoting 20 C.F.R. § 404.1527(a)(2)).  "Absent 'good cause,' an AJL is to give the medical opinions of treating physicians 'substantial or considerable weight.'"  *Id.* at 1179 (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)).  "Good cause exists 'when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent

10

with the doctor's own medical records.'" *Id.* (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004)).  "With good cause, an ALJ may disregard a treating physician's opinion, but he 'must clearly articulate [the] reasons' for doing so." *Id.* at 1179 (quoting *Phillips*, 357 F.3d at 1240-41).

An opinion as to whether a claimant is able to work is not a medical opinion, even if offered by a treating source, but rather a dispositive finding for the ALJ to make.  20 C.F.R. § 404.1527(d)(1); *Kelly v. Comm'r of Soc. Sec.*, 401 F. App'x 403, 407 (11th Cir. 2010).  It is entitled to no special significance.   20 C.F.R. § 404.1527(d)(1) and (3); *Kelly*, 401 F. App'x at 407.

Dr. McLain is a rheumatologist who treated Faughn five times between December 2015 and November 2017.  (Tr. at 205-232, 306-324).  In records of Faughn's January, July, and November 2017 visits, Dr. McLain opined Faughn is "totally disabled."  (*Id.* at 210, 312, 322).  In a form titled "Physical Capacities Evaluation," completed in December 2017, Dr. McLain opined Faughn can lift no more than ten pounds occasionally and five pounds frequently; would be able to sit no more than four hours and stand or walk no more than two hours in an eight-hour work day; would require unscheduled breaks during the work day; would need to recline during the work day outside the normally-provided break periods; can only occasionally bend, stoop, or reach; can rarely push, pull, climb, balance, grasp, twist, or handle; and would likely be absent from work more than four days per month.

11

(*Id.* at 325).  In a form titled "Clinical Assessment of Pain," also completed in December 2017, Dr. McLain opined Faughn's pain is "intractable and virtually incapacitating" and that physical activity would increase her pain to such an extent she would require bedrest and/or medication.  (*Id.* at 326).

The ALJ assigned little weight to Dr. McLain's January 2017 opinion Faughn is "totally disabled" and partial weight to Dr. McLain's December 2017 Physical Capacities Evaluation and Clinical Assessment of Pain. (Tr. at 23).[4]  She articulated several reasons for discounting Dr. McLain's opinion Faughn is "totally disabled," including that the opinion is not a medical opinion, but rather an opinion on an issue reserved to the Commissioner.  This reason constitutes good cause for assigning less than substantial or considerable weight to the opinion.  *See* 20 C.F.R. § 404.1527(d)(1) and (3) (discussed *supra*); *Kelly*, 401 F. App'x at 407 (same); *Heppell-Libsansky v. Comm'r of Soc. Sec.*, 170 F. App'x 693, 698 (11th Cir. 2006) (holding ALJ did not err by declining to accord controlling weight to treating physician's statement he doubted claimant would ever be able to return to gainful employment because such statement is a dispositive finding left to ALJ, not a medical opinion).

As an additional ground for discounting Dr. McLain's opinion Faughn is

---

[4] While the ALJ did not explicitly mention Dr. McLain's July and November 2017 opinions Faughn is "totally disabled," the reasons she articulated for discounting Dr. McLain's January 2017 opinion Faughn is "totally disabled," discussed below, are equally applicable.

"totally disabled," and as a ground for discounting the opinions expressed in the Physical Capacities Evaluation and Clinical Assessment of Pain, the ALJ determined the opinions are not consistent with Dr. McLain's physical examinations of Faughn. (Tr. at 23).  This, too, constitutes good cause for assigning less than substantial or considerable weight to a treating physician's opinion.  *See Flowers v. Comm'r of Soc. Sec.*, 441 F. App'x 735, 741-43 (11th Cir. 2011) (holding ALJ did not err in discounting opinions of treating and examining physicians because those opinions were not supported by the physicians' own clinical findings).

Moreover, substantial evidence supports the ALJ's determination the opinions are not consistent with Dr. McLain's physical examinations of Faughn.  The physical examinations Dr. McLain performed in December 2015 and June 2016 were normal. (Tr. at 218, 225-26).  The physical examinations he performed in January, July, and November 2017 likewise were normal, with the exception they revealed joint tenderness in the left knee; tenderness in the cervical, thoracic, and lumbar spine; soft tissue discomfort in a variety of locations; and a constitutional appearance indicative of pain and depression.  (*Id.* at 208-09, 310-11, 319-20).  These clinical findings do not provide substantial support for Dr. McLain's opinions regarding Faughn's degree of impairment and, in some instances, contradict them.  For example, while Dr. McLain opined Faughn could only occasionally reach, the physical examinations he performed in January, July, and November 2017 showed

Faughn had no limitations with respect to the range of motion in her shoulders, elbows, or hands.  (*Id.* at 209, 311, 320, 325).[5]

Finally, as an additional reason for discounting the opinions Dr. McLain expressed in the Physical Capacities Evaluation and Clinical Assessment of Pain, the ALJ noted it appears the only medication Dr. McLain used to treat Faughn's pain was Naproxen, a nonsteroidal anti-inflammatory drug.  (*Id.* at 23).  Medication, whether prescription or over-the-counter, is considered conservative treatment of a medical condition.  *See Brown v. Comm's of Soc. Sec.*, 680 F. App'x 822, 826 (11th Cir. 2017) (identifying conservative treatment as including prescription medications, physical therapy, diet, and exercise); *Doig v. Colvin*, 2014 WL 4463244, at *4 (M.D. Fla. Sept. 10, 2014) ("The meaning of 'conservative treatment' is well known; it includes any mode of treatment which is short of surgery.  Treatment with medication, whether prescribed or over-the-counter, and steroid injections is still conservative treatment, i.e., not surgery.").  The conservative and routine nature of a claimant's treatment by a physician constitutes good cause for discounting the physician's opinion the claimant has disabling impairments.  *See Horowitz v. Comm'r of Soc. Sec.*, 688 F. App'x 855, 861-62 (11th Cir. 2017) (holding ALJ did

---

[5] Faughn asserts there is no evidence from a medical source that a person suffering from the conditions for which Dr. McLain was treating her should be expected to have abnormal ranges of motion.  (Doc. 9 at 13).  Her assertion misses the point.  Regardless of whether abnormal ranges of motion are symptoms of Faughn's impairments, the fact that Dr. Faughn's physical examinations revealed no abnormal ranges of motion undermines his opinion Faughn can only occasionally reach.

not err in discounting treating psychiatrist's opinion claimant's mental impairments left her unable to work where psychiatrist's treatment of claimant consisted only of 15-minute medication management appointments); *see also Sheldon v. Astrue*, 268 F. App'x 871, 872 (11th Cir. 2008) ("A doctor's conservative medical treatment for a particular condition tends to negate a claim of disability.").[6]

Moreover, substantial evidence supports the ALJ's finding Dr. McLain managed Faughn's pain conservatively with medication.  Records of Faughn's January and July 2017 appointments with Dr. McLain document Naproxen and/or Tizanidine, a muscle relaxer, as the plan for managing Faughn's pain.  (Tr. at 211, 313).  The undersigned also notes that in July and November 2017, Dr. McLain provided instructions to Faughn regarding her diet and stretching, which are other conservative treatment modalities.  (*Id.* at 313, 321).[7]

---

[6] Faughn's counsel argues the fact that Faughn manages her pain with Naproxen is meaningless because "[he] can think of several reasons why [Faughn] is taking only Naproxen, and not narcotic pain relievers," including that Faughn "could be intolerant or even allergic to narcotic pain relievers," that "very few physicians in this day and age are willing to prescribe narcotics on a long-term basis," and that "Faughn simply could be afraid of addiction."  (Doc. 9 at 13-14).  He suggests the ALJ should have asked Faughn at the hearing why she was taking only Naproxen. (*Id.* at 14).  The suppositions of Faughn's counsel regarding her use of Naproxen, as opposed to narcotic pain medication, fail to demonstrate error in the ALJ's analysis of Dr. McLain's opinions for a variety of reasons, first and foremost of which is that even treatment with narcotic pain medication is considered a conservative treatment modality.

[7] Although not explicitly identified by the ALJ as a reason for discounting Dr. McLain's opinions, the undersigned further notes the record of Faughn's November 2017 appointment with Dr. McLain, which preceded the completion of the Physical Capacities Evaluation and Clinical Assessment of Pain by approximately one month, documents that while Faughn reported finding some activities of daily living "difficult," she confirmed she is able to don and doff her shirt, jacket, shoes, and socks; bathe herself; and drive.  (Tr. at 316).  This reported level of functioning is not consistent with Dr. McLain's opinions regarding Faughn's degree of impairment.

For the foregoing reasons, the AJL did not err by assigning little-to-partial weight to Dr. McLain's opinions.

In the context of her argument regarding Dr. McLain's opinions, Faughn also argues the ALJ improperly substituted her unqualified opinion for Dr. McLain's opinion in formulating Faughn's RFC.  (Doc. 9 at 11-12, 14).  This argument fails because a claimant's RFC, like a claimant's ability to work, is an issue reserved to the Commissioner.  *See* 20 C.F.R. § 404.1546(c) ("[T]he [ALJ] . . . is responsible for assessing your [RFC].");  *Moore v. Soc. Sec. Admin., Comm'r*, 649 F. App'x 941, 945 (11th Cir. 2016) (rejecting similar argument because "the task of determining a claimant's [RFC] and ability to work rests with the [ALJ], not a doctor.").

Additionally, in a single sentence appearing at the end of her argument and repeated once in her conclusion, Faughn implies the ALJ improperly rejected testimony from the vocational expert that a person possessing the physical limitations to which Dr. McLain opined in his Physical Capacities Evaluation could not perform Faughn's past relevant work as a therapist or any other work.  (Doc. 9 at 15-16; *see also* Tr. at 46-47, 325).  Because the ALJ properly discounted the opinions Dr. Faughn expressed in the Physical Capacities Evaluation, she was not required to accept testimony of the vocational expert that was based on those opinions.  *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d at 1161 ("[T]he ALJ was not required to include findings in the hypothetical [posed to the vocational expert]

16

that the ALJ had properly rejected as unsupported.").

## V. Conclusion

Having reviewed the administrative record and considered all the arguments presented by the parties, the undersigned finds the Commissioner's decision is due to be **AFFIRMED**.  A separate order will be entered.

**DONE** this 31st day of March, 2021.

STACI  G. CORNELIUS
U.S. MAGISTRATE JUDGE